IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRENT JACOBY, #291 560, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-461-MHT |
| | ) | [WO] |
| DR. PEASANT, | ) | |
| | ) | |
| Defendant. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Brent Jacoby, a state inmate incarcerated at the Kilby Correctional Facility in Mt. Meigs, Alabama, brings this 42 U.S.C. § 1983 action against Dr. John Peasant.[1] Jacoby alleges that Dr. Peasant violated his Eighth Amendment rights by failing to provide him with adequate medical care in June and July 2015 for a painful and itchy skin condition during a previous period of incarceration at Ventress Correctional Facility ("Ventress"). Jacoby seeks damages and requests trial by jury. Doc. 1.

Dr. Peasant filed a special report. Doc. 18. The court entered an order which provided Jacoby an opportunity to file a response to Dr. Peasant's special report. Doc. 19. This order advised Jacoby that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 19 at 3. This order further cautioned Jacoby that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time

---

[1] In accordance with prior orders and proceedings, this case is before the court on Jacoby's amended complaint filed on October 8, 2015. Doc. 9.

[after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the special report[s] and any supporting evidentiary materials as a [dispositive] motion . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." Doc. 19 at 3–4.  Jacoby responded to Dr. Peasant's report, *see* Doc. 22, but his response does not demonstrate that there is any genuine dispute of material fact.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−24.

The defendant has met his evidentiary burden. Thus, the burden shifts to Jacoby to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Jacoby's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

**A.      Eighth Amendment Claim Against Defendant in His Official Capacity**

Jacoby does not indicate the capacity in which he sues Dr. Peasant. To the extent he is sued in his official capacity, the law is settled that official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

State officials may not be sued in their official capacity unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity, and neither has occurred in this case. *See Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (*citing Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996) (discussing abrogation by Congress); *Pennhurst St. School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (discussing Eleventh Amendment immunity); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (establishing that the State of Alabama has not waived Eleventh Amendment immunity). In light of the foregoing, Dr. Peasant is a state actor entitled to sovereign immunity under the Eleventh Amendment for Jacoby's Eighth Amendment claims seeking monetary damages from him in his official capacity. The claim for money damages brought against Dr. Peasant in his official capacity is, therefore, due to be dismissed.

**B.       Eighth Amendment Claim Against Defendant in His Individual Capacity**[2]

Jacoby alleges that he contracted herpes around age 12 or 13 and has reoccurring bouts of herpes outbreaks due to stress and anxiety triggered by the prison environment. While housed in B-1 segregation dorm in June and July 2015, Jacoby experienced constant "pop ups" of herpes sores around his buttocks, thighs, pelvic, and genital area that would not go away. He submitted sick call requests to Dr. Peasant, who refused to prescribe medication that would suppress the herpes outbreaks and alleviate the associated painful burning and itching blisters. Because Dr. Peasant did not believe Jacoby had herpes, Jacoby alleges the physician was unsure how to treat his condition. Despite providing Dr. Peasant with past medical records documenting prescriptions Jacoby had been given to treat his herpes outbreaks, Jacoby complains that Dr. Peasant still refused to provide treatment on several occasions due to a belief that Jacoby's condition was due to scabies, not herpes. Even when test results confirmed that Jacoby had herpes, Jacoby states that Dr. Peasant still failed to provide treatment. Dr. Peasant's conduct, Jacoby claims, caused him to suffer for days and weeks at a time with painful, embarrassing, itching blisters on his penis, genital area, buttocks, pelvic area, and thighs without being provided any treatment to help suppress the outbreaks. Even after Jacoby reminded Dr. Peasant that Dr.

---

[2] Defendant Peasant does not argue the defense of qualified immunity in his special report, he only raises the defense in his answer. Doc. 17 at 4. Because the court concludes that Jacoby has not demonstrated a violation of his constitutional rights, "there is no necessity for further inquiries concerning qualified immunity." *Harrison v. Culliver,* 746 F.3d 1288, 1300 n.15 (11th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Losey v. Thompson*, 596 F. App'x 783, 790 n.3 (11th Cir. 2015) ("Because . . . [plaintiff's] Eighth Amendment claim of deliberate indifference fails, [the defendant] has no need of qualified immunity, so we do not separately address it.").

Peasant previously had treated him for herpes, the physician told Jacoby he would not treat him for herpes or order him any medications. Doc. 9.

Dr. Peasant is the Medical Director at Ventress, a position he has held since 2006. Dr. Peasant is familiar with Jacoby having examined him and treated him during his incarceration at Ventress regarding his medical needs and concerns. The evidentiary materials filed by Dr. Peasant address the allegations made by Jacoby. A thorough review of these documents and records demonstrate that the affidavit submitted by Dr. Peasant describing the treatment provided to Jacoby are corroborated by the objective medical records compiled contemporaneously with the treatment. Docs. 18-1, 18-3 & 18-4.

Specifically, Jacoby submitted a sick call request on June 8, 2015, in which he asserted a belief that he had "a body herpee [sic]diagnosis. This is the only STD I have had and used to take Accyclovir and Valtrax. Please review script." Doc. 18-3 at 83. In a sick call request submitted June 10, 2015, Jacoby complained that bumps on his buttocks were getting worse, and indicated a belief that he had scabies again due to itching on his legs and sides and complaining the first treatment "obviously didn't work!" Doc. 18-3 at 85. Medical staff made an appointment for Jacoby to be seen by Dr. Peasant on June 17, 2015. Doc. 18-3 at 90. On that day, Dr. Peasant examined Jacoby and prescribed two antibiotics to treat his skin condition which the physician attributed to a potential infection. Docs. 18-3 at 94 & 18-4 at 67–69. Jacoby submitted a sick call slip on June 22, 2015, but did not complain about itching or any other skin-related condition. Doc. 18-3 at 97. On June 26, 2015, Jacoby submitted a sick call slip requesting medication for body herpes that were popping up and burned. Doc. 18-3 at 108. Medical staff received the sick call request

on June 29, 2015, and evaluated him on June 30, 2015, during which he referenced "body herpes" and requested medicine. Doc. 18-3 at 108–09. Dr. Peasant evaluated Jacoby on July 1, 2015, and due to the continued presence of a rash, believed the skin irritation to be fungal in nature similar to a previous skin irritation for which Jacoby had been treated. Doc. 18-3 at 109. Dr. Peasant prescribed a fungal treatment for Jacoby due to the failure of the prior antibiotic treatment. Doc. 18-3. Jacoby and the physician also discussed a skin biopsy to evaluate Jacoby's continued complaints of skin discomfort, and Jacoby consented to the procedure. Doc. 18-3 at 113.

In a sick call slip dated July 6, 2015, Jacoby complained of continuing symptoms which he associated with herpes. Doc. 18-3 at 115. Medical staff received Jacoby's biopsy results on July 6, 2015, and the test results indicated he had spongiotic dermatitis that appeared to be secondary to some form of allergic reaction. Doc. 18-3 at 119. Jacoby refused the nursing staff's attempt to see him on July 8, 2015 to discuss medication, cream, bumps, and body pain. Doc. 18-3 at 116. However, medical staff notified Jacoby of the availability of new medications prescribed for him and the availability of that medication through the pill call process at Ventress. Doc. 18-3 at 116. Jacoby next submitted sick call requests on September 9 and 15, 2015, asking that he be tested for HIV. Doc. 18-4 at 70 & 72–73. Dr. Peasant examined Jacoby on September 23, 2015 regarding his concern about contracting HIV, during which Jacoby voiced no complaints to the physician regarding any continuing skin issues or skin irritation. Doc. 18-4 at 70.

Based upon his examinations of Jacoby, Dr. Peasant determined that Jacoby's skin irritation in June and July 2015 developed from a rash secondary to scabies, a fungal

7

infection, or a bacterial infection for which the physician prescribed treatment. While Dr. Peasant noted during exams of Jacoby on June 17, 2015 and July 15, 2015 that he complained of "herpes outbreaks" and "a rash which he [Jacoby] feels is herpes," Doc. 18-4 at 67–69, Dr. Peasant failed to find medical records indicating he ever treated Jacoby for herpes or symptoms associated with herpes nor did he find medical evidence that gave him reason to conclude Jacoby had become infected with herpes. Rather, Dr. Peasant affirms that he routinely and thoroughly evaluated and examined Jacoby for his complaints regarding his skin condition and never ignored his requests for medical treatment or interfered with the provision of his medical care. Docs. 18-1, 18-3 & 18-4.

To prevail on a claim for an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Moreover, medical treatment of prisoners violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, F.2d 1052, 1058 (11th Cir. 1986)). A prison official is not "deliberately indifferent" unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (finding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition,

8

but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."). "A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016).

Within the Eleventh Circuit, medical malpractice and negligence do not equate to deliberate indifference. "That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless." *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999) (citations omitted). To demonstrate a claim of "deliberate indifference to [a] serious medical need . . . , [Jacoby] must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). Thus, in order to obtain relief based on a claim of deliberate indifference, an inmate must establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (finding that for liability to attach, defendant must know of and then disregard an excessive risk to prisoner's health or safety). Regarding the objective component of a deliberate indifference claim, a plaintiff must first show "an objectively serious medical need[ ] . . . and second, that the response made by [the defendants] to that

9

need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnos[is] or treat[ment], or even [m]edical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (internal quotations and citations omitted). To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment. An allegation of negligence is insufficient to state a due process claim." *Daniels*, 474 U.S. at 330–33.

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things: 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. When medical personnel attempt to diagnose and treat an inmate,

10

the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey*, 646 F. App'x at 780. "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and quotations omitted). Additionally, the law is well settled that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of diagnosis does not amount to deliberate indifference violative of the Constitution).

Jacoby argues that Dr. Peasant knew he had herpes based on both physical and documentary evidence. The record, Jacoby claims, clearly shows that he has been diagnosed and treated for herpes within the past ten years but that Dr. Peasant chose not to treat him for that condition and instead sought to convince him he had scabies or other "body sores." By treating him only with "scabies dermatitis medicine" that had no ability to treat his herpes, Jacoby maintains that Dr. Peasant engaged in a mode of treatment designed to be "cost effective." Claiming that he informed Dr. Peasant of what he had, what was wrong, and that the sores on his body confirmed what he diagnosed as herpes, Jacoby contends that the physician chose to ignore him, denied him adequate medical care for his genital herpes, and was therefore "deliberately indifferent to [his] medical needs despite numerous pleas for relief." Doc. 22 at 1–4.

11

Although Jacoby maintains that Dr. Peasant failed to provide proper and adequate medical care and treatment for his skin condition, he presents no medical evidence establishing that the defendant disregarded a substantial risk to his health. Jacoby's evidentiary materials include: (1) medical records prepared by an unknown correctional facility in 2005 and 2006 which reflect Jacoby informed correctional medical officials he had a history of herpes; and (2) medication records from Ventress reflecting that in 2014 he received a prescription used to treat herpes. Doc. 22-1. The fact that Jacoby was previously treated for herpes, however, does not tend to prove that Dr. Peasant acted with deliberated indifference to Jacoby's medical condition during the time about which he complains. Also insufficient are Jacoby's contentions that: (1) Dr. Peasant informed him he had a type of virus other than herpes despite the fact of Jacoby's previous herpes diagnosis; and (2) he complained to the physician that his skin condition was associated with herpes. Doc. 22. Here, Dr. Peasant treated Jacoby based on findings and conclusions made during the physician's physical examinations of Jacoby and the results of medical tests. The physician treated Jacoby pursuant to his observations, physical exams, and test results that indicated Jacoby's skin irritation arose from either a rash secondary to scabies, a fungal infection, or a bacterial infection.

Despite his assertions, Jacoby provides no evidence that his medical care and treatment from Dr. Peasant, was inadequate, detrimental to his health and well-being, or reflective of any disregard by this doctor of a substantial risk of harm to his health and well-being. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (observing that "[s]ociety does not expect that prisoners will have unqualified access to health care"). On the other hand,

Dr. Peasant's evidence reflects that he, along with other prison medical personnel, routinely examined and treated Jacoby's skin condition through lab work, skin biopsies, medication, and anti-biotics.[3] Jacoby's medical records show that medical personnel evaluated, monitored, and treated him for his skin irritation in accordance with their assessment of his condition. There is no indication in Jacoby's medical records that he was denied any necessary treatment or that he suffered any injury or damage due to a denial or a deficiency in the provision of his medical care.

Jacoby has come forward with no significantly probative evidence demonstrating that Dr. Peasant disregarded a substantial risk to his health. *See generally Estelle*, 429 U.S. at 104–05 (holding that mere negligence in providing medical care is insufficient to violate the Constitution). To the extent Jacoby's claim is based upon his own disagreement with the prison medical staff about the course of his medical treatment, this claim does not amount to deliberate indifference. *Id.* at 107; *Hamm,* 774 F.2d at 1575; *see McCright v. Gomez*, 152 F.3d 927 (9th Cir. 1998) (holding that self-diagnosis, rather than objective medical evidence, is not enough). In addition, whether correctional medical personnel "should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (quoting *Estelle*, 429 U.S. at 107); *see also Garvin*

---

[3] An infectious disease specialist examined Jacoby in 2014 for his complaints of an itchy rash in his pelvic region, on his hands, and between his toes and agreed that Jacoby's rash at that time appeared to be fungal in nature and not the result of scabies. Doc. 18-4 at 66. Dr. Peasant examined Jacoby in December 2014 for a rash, which unlike his prior rashes, did appear to be scabies related, and he was treated in accordance with medical protocol for that condition. Doc. 18-4 at 107. Jacoby did not complain of any skin condition again until June 16, 2015, when he submitted a sick call request seeking "another scabies treatment." Doc. 18-3 at 91; Doc. 18-1 at 5; Doc. 18-3 at 61–74 & 81–83.

*v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."). Jacoby presents no evidence showing that Dr. Peasant knew that the way he treated Jacob's skin condition created a substantial risk to Jacoby's health and that he consciously disregarded this risk.

Jacoby's allegations regarding the provision of his medical care and treatment for his skin condition are legally insufficient to defeat Dr. Peasant's properly supported summary judgment motion. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). Jacoby provides nothing more than his unsubstantiated opinions about the quality of the medical care he received. His opinions are insufficient to create a genuine dispute, and his failure to support his claims with medical or scientific evidence is fatal to them. No evidence show that Dr. Peasant demonstrated deliberate indifference towards Jacoby's medical needs by delaying or withholding necessary medical treatment, or by interfering with his ability to access any such necessary treatment. Jacoby merely disagrees with the course of treatment he received during June and July 2015. This disagreement does not provide the framework for a federal complaint under 42 U.S.C. § 1983. *Hamm*, 774 F.2d at 1575; *Waldrop*, 871 F.2d at 1033. Summary judgment is, therefore, due to be granted in Dr. Peasant's favor.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's motion for summary judgment (Doc. 18) be GRANTED.

    2.       Judgment be GRANTED in favor of Defendant and against Plaintiff.

    3.       This case be dismissed with prejudice.

    4.       Costs be taxed against Plaintiff.

It is further ORDERED that **on or before July 23, 2018**, the parties may file an objection to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 9th day of July, 2018.

                                                  GRAY M. BORDEN
                                                  UNITED STATES MAGISTRATE JUDGE